USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/29/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YAKOV VOLOVNIK,

        Plaintiff,

-v.-

BENZEL-BUSCH MOTOR CAR
CORPORATION, GOVERNMENT
EMPLOYEES INSURANCE
COMPANY, JPMORGAN CHASE & CO.,

        Defendants.
------------------------------------------------------------X

09 Civ. 10595 (DAB) (JLC)

REPORT AND
RECOMMENDATION

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Deborah A. Batts, United States District Judge:**

## I. Introduction

Plaintiff Yakov Volovnik ("Plaintiff" or "Volovnik"), proceeding *pro se*, brings this suit under the Truth in Lending Act ("TILA") and the Federal Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1601, 1681, as well as for fraud, breach of contract, and libel under New York law, naming as defendants Benzel-Busch Motor Car Corporation ("Benzel"), Government Employees Insurance Company ("Geico"), and JPMorgan Chase & Co. ("Chase").[1] He alleges that, after delivering his car to Benzel for repairs, he was given a "loaner" car that was subsequently involved in an accident, causing $4,000 in damages to the loaner car. When Benzel learned about the accident, it charged Plaintiff's Chase credit card, which it had on file, without his permission. Plaintiff then notified Chase, his credit card issuer, that this charge was not

---

[1]     Chase is properly identified as Chase Bank USA, N.A., and has been listed as such by Plaintiff in his proposed amended complaint.

USDC SDNY
DATE SCANNED 7/29/10

authorized. Chase, however, declined to eliminate the charge. Plaintiff also sought unsuccessfully to recover the charge from Geico, the insurer of the loaner car.

On December 30, 2009, Volovnik filed his original complaint against the three named defendants. Complaint for Violations of 15 U.S.C. § 1643, Fraud, and Breach of Contract ("Compl.") (Dkt. 1). Both Benzel and Geico have answered the complaint.[2] On March 8, 2010, Chase moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] Chase's Notice of Motion to Dismiss ("Mot. to Dismiss") (Dkt. 5). In moving to dismiss, Chase argues that Volovnik's voluntary relinquishment of his credit card created apparent authority for Benzel to charge his card, thereby precluding a TILA claim against Chase. Memorandum of Law in Support of its Motion to Dismiss ("Chase's Mem."), filed March 8, 2010 (Dkt. 6). Chase also contends that Plaintiff's requests for punitive damages, attorney's fees, and injunctive relief are barred under TILA. Id.

On April 16, 2010, Plaintiff responded to Chase's motion by filing a Motion for Leave to Amend, to which he attached a proposed Amended Complaint, along with an opposition to the motion to dismiss. The Amended Complaint includes the original TILA claim against Chase, as well as additional claims under FCRA and New York law for libel. Motion for Leave to Amend ("Am. Compl.") ¶¶ 36-50 (Dkt. 9). In addition, Plaintiff removed the requests for punitive damages, attorney's fees, and injunctive relief for his TILA claims, and replaced them with a request for actual damages. Id. ¶¶ b, c.

---

[2]  Geico answered the complaint on March 5, 2010, and asserted cross-claims against Chase and Benzel. (Dkt. 3). Benzel answered the complaint on May 12, 2010. (Dkt. 14).

[3]  Chase's Notice of Motion invokes Rule 12(b)(1), which concerns lack of subject matter jurisdiction. However, Chase's memoranda of law seek dismissal solely for failure to state a claim under Rule 12(b)(6). We will address both issues *infra*.

2

On April 30, 2010, Chase filed reply papers in further support of its motion to dismiss, reiterating its arguments against Plaintiff's TILA claims and moving to dismiss Plaintiff's newly-added FCRA claims on the grounds that, since Benzel had apparent authority to make the disputed charge, his FCRA claims should be dismissed because any information allegedly disseminated by Chase was accurate.[4]  Chase's Reply Memorandum of Law in Further Support of Chase's Motion to Dismiss Plaintiff's Complaint ("Chase's Reply Mem.") (Dkt. 11).

For the reasons stated below, I recommend that Plaintiff's motion to amend the complaint be granted, and Chase's motion to dismiss be granted in part and denied in part.

## II.   Factual Background

The following facts are alleged in Plaintiff's original and amended complaint and are assumed to be true for purposes of this motion.

On or about May 10, 2009, Volovnik delivered his car to Benzel for repairs, and Benzel provided Volovnik with a "loaner" vehicle to use while his car was being repaired.  Compl. ¶ 11. Volovnik provided Benzel with a credit card to pay for the repairs to his car.  Id. ¶ 12.  At no time did Volovnik agree to be held liable for damages sustained to the loaner car, nor did he authorize the costs of any damages to that car to be charged to the credit card he provided to Benzel.  Id. ¶ 13.

On or about May 12, 2009, Volovnik was involved in an auto accident with another car, causing approximately $4,000 in damages to the loaner car.  Id. ¶¶ 14, 16.  When Benzel was made aware of the accident, it informed Plaintiff that he would be responsible for dealing with the insurance company and that Benzel would be billing him for the damages directly via the credit card on file.  Id. ¶ 15.  Volovnik expressed to Benzel that he would not grant Benzel

---

[4]   Chase did not move to dismiss the libel claim, which Plaintiff had added to his Amended Complaint against Chase.  Am. Compl. ¶¶ 45-50.

3

permission to bill the damages to his credit card. Id. ¶ 18. Nevertheless, Benzel billed $4,000 to Plaintiff's Chase credit card. Id. ¶¶ 16, 17. Volovnik never signed a credit card receipt for the charge. Id. ¶ 18.

At the end of May 2009, Plaintiff notified Chase, the card issuer, that the charge billed for repairs to the loaner car was fraudulent. Id. ¶ 19. Volovnik cooperated with Chase in obtaining the information necessary to process the dispute. Id. ¶ 20. Chase's investigation into the charge yielded no evidence that Plaintiff authorized the additional amount, but Chase declined to remove the charge from Plaintiff's account. Id. ¶ 21. Instead, Chase assessed an "over limit" fee, closed the account for exceeding its credit limit, and threatened that, if Volovnik failed to pay the balance, then his account would be reflected negatively on his credit report. Id. ¶ 23. Ultimately Chase reported to at least one credit reporting agency that Volovnik's credit card account was delinquent due to his failure to pay the disputed charge. Am. Compl. ¶ 27.

Starting in late May, 2009, Plaintiff attempted unsuccessfully to recover the charge from Geico. Compl. ¶¶ 24-26. To date, Plaintiff has received no reimbursement from Geico, nor any credit from Benzel or Chase. Id. ¶ 27.

## III. Discussion

### A. The Proposed Amended Complaint

In opposing Chase's motion, Plaintiff has cross-moved for leave to file an amended complaint. (Dkt. 9). The proposed amended complaint makes the following changes to the original complaint: (1) relists Chase under its proper name; (2) replaces the request for injunctive relief with one for actual damages; (3) withdraws the requests for punitive damages under TILA and for attorney's fees; and (4) asserts new claims against Chase for violations of FCRA and under New York law for libel.

Rule 15(a) of the Federal Rules of Civil Procedure specifies that leave to amend is to "be freely given when justice so requires." As explained by the Supreme Court, such leave is to be liberally granted:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. – the leave sought should, as the rules require, "be freely given."

Foman v Davis, 371 U.S. 178, 182 (1962). It is well settled that district courts have broad discretion to grant leave to amend. See, e.g., In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 404 (2d Cir. 2005). Moreover, "[t]rial courts have been directed to read *pro se* papers liberally, and to allow amendment of *pro se* complaints fairly freely." Augustus v. MSG Metro Channel, 217 F. Supp. 2d 458, 463 (S.D.N.Y. 2002) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). "The most common reasons [why] courts have denied leave to amend are that amendment will result in undue prejudice to the other parties, it is unduly delayed, or it is offered in bad faith or for a dilatory purpose." Id. at 464 (citations omitted).

In this case, no undue prejudice will result in granting Plaintiff's motion to amend his complaint. Indeed, Chase, in its reply papers, has already responded to the amended complaint. In addition, the proposed amendment is not unduly delayed; in fact, it was proposed before Benzel had even answered the original complaint. Finally, the proposed amended complaint is not offered in bad faith or for a dilatory purpose. To the contrary, Plaintiff, having reviewed Chase's motion papers and conceded certain defects in his original pleading, has chosen to correct the defects in his amended complaint – as well as add additional claims against Chase. For all these reasons, leave to amend the complaint should be granted.

### B.     Subject Matter Jurisdiction

Chase referred to Rule 12(b)(1) in its notice of motion but neglected to argue lack of subject matter jurisdiction in its memoranda of law, focusing solely on its Rule 12(b)(6) argument in its briefing. Mot. to Dismiss at 2; Chase's Mem. at 3-6; Chase's Reply Mem. at 2-7. Nevertheless, "[a] court presented with a motion to dismiss under both Rules 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" Chambers v. Wright, No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting Magee v. Nassau County Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)). In other words, courts analyze subject matter jurisdiction first, "since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot." Cement & Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Constr. Corp., No. 04 Civ. 0915 (CPS), 2007 WL 526621, at *2 (E.D.N.Y. Feb. 13, 2007).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if the reviewing court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction to adjudicate the pleaded claims. Howard v. Mun. Credit Union, No. 05 Civ. 7488 (LAK), 2008 WL 782760, at *4 (S.D.N.Y. March 25, 2008) (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).

Here, Plaintiff asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1367 (supplemental jurisdiction). See Am. Compl. ¶ 4. Plaintiff is correct that the Court has "federal question" jurisdiction over this action. Federal

6

question jurisdiction exists when the action arises out of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In this case, Plaintiff has claimed that Chase violated his rights under TILA and FCRA, both federal laws. Despite Chase's motion to dismiss Plaintiff's claims under both laws, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." Bell v. Hood, 327 U.S. 678, 682 (1946). In the present case, Plaintiff's invocation of TILA or FCRA is sufficient for jurisdictional purposes.

Therefore, as a threshold matter, I recommend that the Court find that it has subject matter jurisdiction, and reject Chase's motion to dismiss to the extent it is made under Fed. R. Civ. P. 12(b)(1).

### C. Motion to Dismiss Standard

A complaint will be dismissed pursuant to Rule 12(b)(6) if a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In adjudicating such a motion, the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The pleading's "factual allegations [must be] sufficient 'to raise a right to relief above the speculative level.'" Boykin v. Keycorp, 521 F.3d 202, 213 (2d Cir. 2008) (quoting Twombly, 550 U.S. at 555). However, the Second Circuit has frequently noted that the pleadings of *pro se* litigants should be "construed liberally." Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam). Also, "when reviewing *pro se* submissions, a district court

should look at them 'with a lenient eye, allowing borderline cases to proceed.'" Phillips v. Girdich, 408 F.3d 124, 127-28 (2d Cir. 2005) (quoting Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam)).

### D. Adequacy of Plaintiff's TILA Claim

As part of the 1970 Amendments to TILA, Congress enacted a scheme for limiting the liability of cardholders for all unauthorized charges by third parties. 15 U.S.C. §§ 1602(j)-(o), 1642-44 (1988). Section 1643(a)(1) states that

> [a] cardholder shall be liable for the unauthorized use of a credit card only if
>
> > (A) the card is an accepted credit card;
> >
> > (B) the liability is not in excess of $50;
> >
> > (C) the card issuer gives adequate notice to the cardholder of the potential liability;
> >
> > (D) the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card, which description may be provided on the face or reverse side of the statement required by section 1637(b) of this title or on a separate notice accompanying such statement;
> >
> > (E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise; and
> >
> > (F) the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it.

Except as provided in section 1643, "a card holder incurs no liability from the authorized use of a credit card." 15 U.S.C. § 1643(d).

8

1. **Standing**

As a threshold issue, this Court must determine whether Plaintiff has standing to sue under section 1643 of TILA. On its face, section 1643 appears only to limit the liability of cardholders, in certain circumstances, to a maximum of $50 for unauthorized charges, rather than to "impose any obligation on issuers of credit cards to pay the costs associated with unauthorized or fraudulent use of credit cards." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008). Such a narrow reading would foreclose cardholders from bringing lawsuits against card issuers for affirmative, and not simply declarative, relief. The Third Circuit adopted this view in Sovereign Bank, stating that section 1643 "only applies to actions in which card issuers . . . seek to enforce liability for the use of a credit card." Grimm v. Discover Fin. Servs., Nos. 08-747, 08-832, 2008 WL 4821695, at *16 (W.D. Pa. Nov. 4, 2008) (citing Sovereign Bank, 533 F.3d 162).

The Second Circuit, however, has not yet decided whether section 1643 obligates card issuers to reimburse its cardholders' accounts, and thus whether cardholders can maintain a cause of action against card issuers under section 1643. In Towers World Airways Inc. v. PHH Aviation Systems Inc., 933 F.2d 174 (2d Cir. 1991),[5] a Second Circuit case in which a cardholder brought an action against a card issuer under section 1643, the plaintiff only sought a declaratory judgment that it was not liable for sums charged by its agent, and the card issuer counterclaimed for the amount charged. More recently, in Minskoff v. American Express, 98 F.3d 703 (2d Cir. 1996), the Second Circuit decided another case brought by a cardholder against the card issuer under section 1643 seeking reimbursement for allegedly unauthorized charges. Despite being initiated by a cardholder against a card issuer, and not vice versa, the Second

---

[5]    Towers is discussed in greater detail *infra* at 14.

Circuit allowed the suit to proceed as a viable TILA claim. In reaching its conclusion, the Second Circuit rejected the trial court's determination that whenever a card is acquired through fraud or theft the court is precluded from a finding of apparent authority for the subsequent use of a credit card so obtained. Minskoff, 98 F.3d at 709. The Second Circuit's opinion in Minskoff appears to suggest that it would likely reject the Third Circuit's narrow interpretation of section 1643 and allow for suits to be brought by cardholders. Without controlling authority on the issue, we will proceed under the assumption that Volovnik has standing to sue to recover for an unauthorized charge under section 1643.

### 2. Sufficiency of the Allegations

Based on the wording of section 1643, it appears that in order to state a claim the Plaintiff must allege that one of the conditions described in the statute has not been met. Here, Plaintiff argues that the disputed charges were the result of an unauthorized use of an accepted credit card in excess of $50. Compl. ¶ 3. Having alleged that condition (a)(1)(B) has not been met, Plaintiff appears to have sufficiently pleaded a violation of section 1643. But that is not the end of the inquiry.

TILA defines the term "unauthorized use" as "a use of a credit card by a person other than the cardholder who does not have actual, implied, or *apparent authority* for such use and from which the cardholder receives no benefit." 15 U.S.C. § 1602(o) (emphasis added). In so defining "unauthorized use," "Congress apparently contemplated, and courts have accepted, primary reliance on background principles of agency law in determining the liability of cardholders for charges incurred by third-party card bearers." Minskoff, 98 F.3d at 708 (quoting Towers, 933 F.2d at 176-77). Under general principles of agency, an agent has the authority "to do an act or to conduct a transaction on account of the principal which, with respect to the

principal, he is privileged to do because of the principal's manifestations to him." Id. (quoting Restatement (Second) of Agency ("Restatement (Second)") § 7 cmt. a (1958)). "Such authority may be express or implied, but in either case it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." Id. (citing Restatement (Second) § 7 cmt. b). Express authority exists when the principal explicitly states that the agent has the authority to act on its behalf. Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 511 (E.D. Pa. 2009). Implied authority "flows from the principal's grant of express authority and empowers the agent to do what is necessary to accomplish the purpose of the agency." Id.

Accepting as true the factual allegations in the Amended Complaint, it is undisputed that Benzel acted without actual or implied authority when it charged the additional repairs to Plaintiff's credit card. Plaintiff alleges in his Complaint that "[a]t no time did [he] make an agreement to be liable for damages to the loaner vehicle, and at no time did [he] authorize a debit to his credit card in the event of damages to said vehicle." Compl. ¶ 18; Am. Compl. ¶ 18.

Therefore, the question becomes whether Benzel's additional charge was "authorized" as a result of its apparent authority to use the card and thus falls outside of the protections available to Volovnik under section 1643. Chase argues that it cannot be held liable under TILA because section 1643(a) protects cardholders from liability only for "unauthorized" use of a credit card. Since Volovnik alleges in both the original and amended complaints that he voluntarily provided his credit card to Benzel, Chase argues that he gave Benzel apparent authority to make additional charges. Chase's Mem. at 3-4; Chase's Reply Mem. at 4.

Apparent authority is "entirely distinct from authority, either express or implied." Restatement (Second) § 8 cmt. a. Unlike express or implied authority, apparent authority exists

11

when there is no express authority. It arises from "the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him." Minskoff, 98 F.3d at 708 (quoting Restatement (Second) § 27). Accordingly, apparent authority is "normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." Id. (citing Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989)).

Inherent in the creation of apparent authority is a relationship of agency, which always "contemplates *three* parties – the principal, the agent, and the third party with whom the agent is to deal." Restatement (Third) of Agency ("Restatement (Third)") § 1.01 cmt. c (2006) (emphasis added). Common examples of principal-agent relationships include employer and employee, corporation and officer, client and lawyer, and partnership and general partner. Id. People often retain agents to perform specific services. However, "[n]ot all relationships in which one person provides services to another satisfy the definition of agency." Id.

Here, Chase construes the relationship between Plaintiff and Benzel as one of principal and agent. Chase's Reply Mem. at 4. We have not found any court that has confronted a factually congruent case since TILA's enactment involving the issue of apparent authority where a principal-agent relationship was considered to exist between a cardholder and a service-provider or merchant directly. While the absence of any court decisions to support Chase's construction is not proof of its impossibility, the jurisprudence on apparent authority under TILA typically involves an agency relationship in which a principal, usually an employer, authorizes an agent, usually an employee, to make purchases using the principal's credit card. The agent then makes allegedly unauthorized purchases from a merchant or service-provider. Not only are

the circumstances here materially distinguishable from these cases, but it would strain credulity to assume, as Chase suggests, that any time a cardholder relinquishes his card to a service provider or merchant, a principal-agency relationship is established that would make the cardholder liable for any and all charges by that service provider or merchant.

Even if we accept Chase's proposed framework, wherein a principal-agent relationship existed between Plaintiff and Benzel, Plaintiff has sufficiently stated a claim under TILA. The Second Circuit has not decided whether as a matter of law "voluntary relinquishment of a credit card for one purpose creates in every case apparent authority to incur other charges." Towers, 933 F.2d at 178. It is true that apparent authority is never created "where the transfer of the card was without the cardholder's consent, as in cases involving theft, loss, or fraud." Id. However, the Second Circuit has not held, as Chase argues, that to establish that the use of a credit card was unauthorized, the transfer of the card *must* be without the cardholder's consent. Chase's Mem. at 4; Chase's Reply Mem. at 4.

In Towers, PHH Aviation Systems ("PHH") issued a credit card to Towers World Airways, Inc. ("Towers") to purchase fuel and other aircraft-related goods and services for a corporate jet leased by Towers from PHH. Id. at 175. An officer of Towers designated Fred Schley, an employee of World Jet Corporation, the company responsible for maintaining the aircraft, "as the chief pilot of the leased jet and gave him permission to make purchases with the PHH credit card at least in connection with *non-charter* flights, which were used exclusively by Towers executives." Id. Schley used the card, however, to charge nearly $90,000 to Towers in connection with *charter* flights.

The Second Circuit in Towers acknowledged that other courts have declined to apply TILA to limit a cardholder's liability wherever the cardholder voluntarily relinquished the card.

13

Towers, 933 F.2d at 177-78 (citing Martin v. Am. Express, Inc., 361 So.2d 597, 600 (Ala. Civ. App. 1978)) (reasoning that "voluntary relinquishment of the card for one purpose gives the bearer apparent authority to make additional charges"). However, the Towers court went on to say, "though we agree that a cardholder, in lending or giving his card for one purpose acts in a way that significantly contributes to the appearance of authority, at least as perceived by the third-party merchant, to make other purchases, we need not decide whether voluntary relinquishment for one purpose creates in every case apparent authority to incur other charges." Id. at 178. The substantial evidence of conduct and circumstances independent of Towers' consent to Schley's unrestricted access to the PHH card allowed the court to avoid offering a definitive position on the issue of voluntary relinquishment, while finding that Schley had apparent authority to purchase fuel on chartered flights. Id.

In the nearly two decades since the Towers decision, the Second Circuit has not clarified whether it intends to adopt the bright-line rule promulgated by the Court of Civil Appeals of Alabama in Martin, or a more nuanced, case-by-case approach in determining the existence of apparent authority absent theft, fraud, or loss. Without further guidance from the Second Circuit on this issue, the mere fact that Volovnik gave his card to Benzel is not enough to foreclose a TILA claim. Nor are there other facts alleged in the complaint (or the amended complaint) from which the Court can infer that there were other circumstances which caused Chase to assume that Volovnik gave Benzel apparent authority for the additional charge. Indeed, the Second Circuit has observed that "[t]he existence of apparent authority is normally a question of fact," Minskoff, 98 F.3d at 708, and thus inappropriate for resolution on summary judgment, much less on a motion to dismiss. Therefore, Chase's motion to dismiss Plaintiff's TILA claim should be denied.

### E. Adequacy of Plaintiff's FCRA Claim

In his Amended Complaint, Plaintiff includes two additional claims against Chase under subsections 1681s-2(a)(1)(A) and 1681s-2(a)(3) of the FCRA. Chase argues that because Benzel had apparent authority to make the disputed charge, the FCRA claims should be dismissed because any information allegedly disseminated by Chase was accurate. Subsection 1681s-2(a) provides that "a furnisher of information has a duty to report information accurately to credit reporting agencies, and also has an ongoing duty to update and correct the information that it reports." Howard, 2008 WL 782760, at *7. However, only a government agency or official has authority to enforce these duties. Therefore, "no private right of action is available under this provision." Id. (citing Prakash v. Homecomings Fin., No. 05-CV-2895 (JFB)(VVP), 2006 WL 2570900, at *2 (E.D.N.Y. Sept. 5, 2006) (no standing to pursue claims under section 1681s-2(a) of the FCRA "because the plain, unambiguous language of the statute limits the enforcement of this subsection to government agencies and officials"); 15 U.S.C. § 1681s-2(d). Therefore, Plaintiff cannot maintain a claim against Chase under these provisions of the FCRA.

### F. Remedies

#### 1. Original Complaint

In his original complaint, Volovnik sought punitive damages, reasonable attorney's fees, and injunctive relief from Chase for its alleged violation of section 1643 under TILA. Chase argued, and Plaintiff later agreed in his amended complaint, that none of these forms of relief are available to Plaintiff. Chase's Reply Mem. at 2-3. TILA is remedial in nature, and as such, damages for TILA violations are expressly limited by statute to: (1) actual damages; (2) costs; (3) statutory damages; and (4) reasonable attorney's fees. Durandisse v. U.S. Auto Task Force,

No. 06 Civ. 2463 (DC), 2009 WL 2337133, at *4 (S.D.N.Y. July 30, 2009) (citing Pechinski v. Astoria Fed. Savs. & Loan Ass'n, 238 F. Supp. 2d 640, 642 (S.D.N.Y. 2003)); 15 U.S.C. § 1640(a)(1)-(3). While the Second Circuit has not addressed whether the remedies prescribed by TILA are exclusive, the trend among other courts is to consider them so. See, e.g., Mays v. U.S. Bank, No. 1:09-CV-1586 (AWI)(SMS), 2010 WL 318537, at *9 (E.D. Cal. Jan. 20, 2010); Fullmer v. JPMorgan Chase Bank, No. 209-cv-1037 (JFM), 2010 WL 95206, at *9 (E.D. Cal. Jan. 6, 2010) ("Injunctive relief is not a remedy provided in the statute and should not be read into it."). In addition, the canon of statutory interpretation *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") applies here. Ghassabian v. Hematian, No. 08 Civ. 4400 (SAS), 2008 WL 3982885, at *2 (S.D.N.Y. Aug. 27, 2008); see Scott v. City of New York, 592 F.Supp. 2d 501, 506 (S.D.N.Y. 2008) ("the maxim *expressio unius est exclusio alterius* cautions that a court should not add elements to a list of statutory or regulatory requirements.") (citing Green v. United States, 79 F.3d 1348, 1355 (2d Cir. 1996)). Thus, neither punitive nor injunctive remedies should be read into the statute. Finally, despite TILA's provision for reasonable attorney's fees under section 1640, it does not extend to attorneys who bring claims as *pro se* litigants, let alone non-attorney *pro se* litigants, such as Volovnik. See, e.g., Belmont v. Assoc. Nat. Bank (Delaware), 119 F. Supp. 2d 149, 166 (E.D.N.Y. 2000). Therefore, Plaintiff's claims for punitive damages, injunctive relief, and attorney's fees in his original complaint should be struck.

### 2. Amended Complaint

Plaintiff's amendments to his prayer for relief have corrected any errors. For his TILA claim, Volovnik now seeks only actual damages as permitted by the statute. Am. Compl. ¶ (a); 15 U.S.C. § 1640(a)(1). Plaintiff's additional requests for relief specific to Chase are all

pursuant to his FCRA and libel claims, and Chase does not dispute the availability of those remedies. Nonetheless, because Plaintiff's FCRA claims should be dismissed, the relief sought under that title (statutory and punitive damages) should be struck as well. See Am. Compl. ¶¶ (d), (e).

## IV. Conclusion

For the foregoing reasons, Plaintiff's original complaint is sufficient to state a claim against Chase. However, Plaintiff's requests for punitive damages, injunctive relief, and attorney's fees should be struck. The Court should accept the amended complaint, and find that it is also sufficient to state a claim under TILA and all remedies requested are available under the pertinent laws. However, because subsection 1681s-2(a) of the FCRA does not provide a private right of action, and thus Plaintiff cannot maintain a claim against Chase under that provision, Plaintiff's FCRA claims should be dismissed. Given the nature of this case and the scope of relief sought herein, the Court may wish to refer it for a settlement conference or mediation upon disposition of this motion.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

**APPELLATE REVIEW.** See Thomas v. Am., 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992), Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Plaintiff does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from Defendant's counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (noting that the Court may ask opposing counsel to provide, to a *pro se* litigant, copies of decisions that are available electronically).

Dated: New York, New York
       July 29, 2010

JAMES L. COTT
United States Magistrate Judge

Copies mailed to:

Yakov Volovnik
21 Columbia Avenue
Cliffside Park, New Jersey 07010

Andrew R. Goldenberg
Stagg, Terenzi, Confusione & Wabnik, LLP
Attorneys at Law
401 Franklin Avenue, Suite 300
Garden City, New York 11530

Hon. Deborah A. Batts